Per Curiam.
{¶ 1} Respondent, Leo Johnny Talikka of Painesville, Ohio, Attorney Registration No. 0006613, was admitted to the practice of law in Ohio in 1968. In a third amended complaint filed on July 18, 2012, relator, disciplinary counsel, charged Talikka with professional misconduct in his handling of eight separate client matters.
{¶ 2} The parties entered into stipulations of fact and misconduct with respect to all eight counts, acknowledging that Talikka had committed multiple violations of 12 Rules of Professional Conduct — 38 violations in all. They stipulated to 62 *324 exhibits, four aggravating factors, and two mitigating factors, and agreed that the appropriate sanction for Talikka’s misconduct is a two-year suspension from the practice of law in Ohio with the second year stayed on conditions. They also jointly waived a hearing on the matter.
{¶ 3} A panel of the Board of Commissioners on Grievances and Discipline adopted the parties’ stipulations of fact and misconduct and aggravating and mitigating factors. The panel found one additional aggravating factor, but agreed that a two-year suspension with one year stayed on conditions was the appropriate sanction for Talikka’s misconduct.
{¶ 4} The board adopted the panel’s findings of fact and misconduct, as well as its findings regarding the aggravating and mitigating factors present in this case. However, citing the extensive nature of the misconduct and the harm caused to the eight affected clients, the board recommended that Talikka be indefinitely suspended from the practice of law and that reinstatement be conditioned on the payment of restitution and interest to three of the affected clients.
{¶ 5} Talikka objects to the board’s recommended sanction, and the relator concurs in that objection. Because we believe that the sanction recommended by the parties and the panel will adequately protect the public from future harm, we sustain Talikka’s objection and suspend him from the practice of law for two years, with the second year stayed on the conditions recommended by the panel.
Misconduct
{¶ 6} The parties have stipulated that Talikka committed three violations of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) in his handling of three separate client matters by failing to file an appellate brief on behalf of one client, failing to respond to a motion to dismiss and a motion for judgment on the pleadings in a second client’s case, and failing to file a motion for judicial release for a third client. He failed to inform two of those clients that their cases had been dismissed, thereby violating Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), and failed to refund the unearned portion of their retainers when they terminated his representation, in violation of Prof.Cond.R. 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer’s withdrawal from employment). He also failed to respond to reasonable requests for information from his client in one matter in violation of Prof.Cond.R. 1.4(a)(4).
{¶ 7} Talikka also engaged in misconduct related to the handling of client funds. He failed to safeguard $10,000 belonging to a client in his client trust account, in violation of Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer’s own property). He failed to maintain records of the funds he should have been *325 holding in his client trust account for five separate clients, in violation of Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held) and failed to properly administer those funds, in violation of Prof.Cond.R. 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation the funds held in the lawyer’s client trust account).
{¶ 8} And in three personal-injury matters for which Talikka was to receive a contingency fee, he failed to have his clients sign closing statements, in violation of Prof.Cond.R. 1.5(c)(2) (requiring a lawyer entitled to a contingency fee to prepare a closing statement to be signed by the lawyer and the client, detailing the lawyer’s compensation, any costs and expenses to be deducted, and any division of fees with a lawyer not in the same firm), and failed to promptly distribute all of the funds that his clients were entitled to receive, in violation of Prof.Cond.R. 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive).
{¶ 9} Talikka stipulates that his conduct in five of the charged matters violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and that his conduct with respect to one of those clients violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). He also acknowledges that his conduct in all eight of the charged counts violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer’s fitness to practice law).
{¶ 10} On the recommendation of the panel and board, we adopt the parties’ stipulated findings of fact and misconduct.
Sanction
{¶ 11} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. Stark Cty. Bar Assn. v. Buttacavoli, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc. Reg. 10(B). Disciplinary Counsel v. Broeren, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.
{¶ 12} Here, Talikka has engaged in a pattern of misconduct in violation of the Rules of Professional Conduct, as outlined above.
{¶ 13} As aggravating factors, the parties stipulated and the board found that Talikka acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, and failed to make restitution to the *326 clients harmed by his misconduct.[1] See BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (i). The panel and board also found that Talikka’s conduct harmed a number of vulnerable clients. See BCGD Proc.Reg. 10(B)(1)(h).
{¶ 14} As mitigating factors, the parties stipulated that Talikka had no prior disciplinary record in a career spanning more than 40 years and that he demonstrated good character apart from the charged misconduct, evidenced by letters from Judges Thomas D. Lambros, Ronald W. Vettel, Michael A. Cicconetti, Charles G. Hague, and Alfred W. Mackey.
{¶ 15} The parties have stipulated that the appropriate sanction for Talikka’s misconduct is a two-year suspension from the practice of law, with the second year stayed on the conditions that he (1) commit no further misconduct, (2) make restitution of $8,674.59 to Jeffrey Homkes, $1,000 to Fran Cantrell, and $39,196.70 to John Ingram, and (3) complete one year of monitored probation in accordance with Gov.Bar R. V(9)(B) upon his reinstatement to the practice of law. The panel adopted the parties’ stipulated sanction and further specified that regardless of whether the term of the suspension had passed, Talikka should not be reinstated to the practice of law until he makes the stipulated restitution, plus interest at the statutory rate calculated from various specified dates to the date of payment to Jeffrey Homkes, Fran Cantrell, and John Ingram. However, noting the extensive nature of Talikka’s misconduct, which caused harm to eight separate clients, the board recommended that he be indefinitely suspended from the practice of law and that his reinstatement be conditioned on the payment of restitution plus interest to the affected clients as recommended by the panel.
{¶ 16} Talikka objects to the board’s recommended sanction, arguing that it is too harsh in light of his long and distinguished career prior to the charged misconduct, his excellent character and reputation as attested to by five judges, his voluntary involvement with the Ohio Lawyers Assistance Program, and the sanctions this court has imposed in other cases for comparable misconduct. Relator joins Talikka in urging this court to reject the board’s recommendation and adopt their stipulated sanction. In support of their argument, Talikka and relator argue that Talikka’s misconduct is comparable to that of the attorney in Disciplinary Counsel v. Folwell, 129 Ohio St.3d 297, 2011-Ohio-3181, 951 N.E.2d 775, and that Talikka’s misconduct warrants the same sanction. In Folwell, we imposed a two-year suspension with the second year stayed on the conditions that the attorney commit no further misconduct and submit to a one-year period of monitored probation.
*327 {¶ 17} Folwell, an attorney with approximately 20 years of experience, stipulated that he had engaged in a pattern of misconduct involving seven separate client matters and that his conduct adversely reflected on his fitness to practice law. He failed to provide competent representation and failed to act with reasonable diligence by settling a case for a minor client without obtaining probate court approval, failed to maintain separate client ledgers for his client trust account, failed to perform monthly reconciliations of that account, and improperly used client funds. He also unreasonably delayed performing contracted work for one client, led a client to believe that his case had been filed when it had not, accepted retainers from other clients, failed to perform the contracted work, and delayed for as long as two and a half years before refunding the unearned portion of his fees. As mitigating factors, the parties stipulated that Folwell had no prior disciplinary record and had cooperated in the disciplinary proceedings. See BCGD Proc.Reg. 10(B)(2)(a) and (d).
{¶ 18} Citing Disciplinary Counsel v. Claflin, 107 Ohio St.3d 31, 2005-Ohio-5827, 836 N.E.2d 564, at ¶ 14-15, we recognized that disbarment is the presumptive sanction for misappropriation, but acknowledged that that sanction can be tempered by mitigating factors. Folwell at ¶ 36. Although we found that Folwell had engaged in a pattern of misconduct involving multiple offenses and that he acted with a dishonest or selfish motive, see BCGD Proc.Reg. 10(B)(1)(d) and (b), we adopted the parties’ recommended sanction of a two-year suspension with the second year stayed on the conditions that Folwell commit no further misconduct and complete a one-year period of monitored probation.
{¶ 19} We have long recognized that the primary purpose of the disciplinary process is not to punish the offender but to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship. See, e.g., Disciplinary Counsel v. Agopian, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10.
{¶ 20} Here, Talikka has no prior disciplinary record in his 40-plus years of practice and suffered from a series of serious health problems during the time that he committed his misconduct. He voluntarily participated in a psychological evaluation conducted by Robert Kaplan, Ph.D., who reports that Talikka does not suffer from any mental-health or substance-abuse disorder, but that he is a proud man who took on more work than he could handle to maintain his self-esteem as he faced those significant health problems. Additionally, Dr. Kaplan reports that Talikka has accepted full responsibility for his conduct. In light of Talikka’s decision to stipulate to the facts underlying relator’s complaint as well as the charged misconduct, we agree.
{¶ 21} Dr. Kaplan further states that through ongoing counseling, Talikka has come to understand and accept the limitations that his age- and health-related *328 issues impose on his work. Talikka has presented letters from five judges who have known him both personally and professionally for some time. Each of them attests to his honesty, good character, professionalism, zealous representation of his clients, and good reputation in the legal community. And although Talikka has caused harm to vulnerable clients, he has made restitution to those clients affected by his misconduct and pledged to pay interest on the funds that he wrongfully held as soon as he is presented with a calculation of the amounts due and owing. For these reasons, we agree that the sanction recommended by the parties and the panel is adequate to protect the public from future harm.
{¶ 22} Accordingly, we suspend Leo Johnny Talikka from the practice of law in Ohio for two years with the second year stayed on the conditions that he (1) commit no further misconduct, (2) pay statutory interest within 30 days of the date of this order to the following clients at the rate prescribed by R.C. 1343.03(A) and 5703.47 on the following principal amounts for the specified periods of time: (a) $8,674.59 from May 6, 2009, to the date restitution was made to Jeffrey Homkes, (b) $1,000 from July 15, 2011, to the date restitution was made to Fran Cantrell, and (c) $39,196.70 from November 30, 2011, to the date restitution was made to John Ingram, and (3) upon reinstatement serve a one-year period of monitored probation in accordance with Gov.Bar R. V(9)(B). If Talikka fails to comply with the conditions of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Talikka.
Judgment accordingly.
Pfeifer, O’Donnell, Kennedy, and O’Neill, JJ., concur.
O’Connor, C.J., and Lanzinger and French, JJ., dissent.

. At oral argument, the parties stated that following the board’s issuance of its report, Talikka made restitution to the affected clients, but that he had not paid them interest for the time that he held their funds.